UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TED HALL,

               Plaintiff,                     Case No. 2:15-cv-13643
                                                Judge Gerald E. Rosen
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 9) and GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 11)**

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 9), **GRANT** Defendant's motion for summary judgment (DE 11),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

       Plaintiff, Ted Hall, brings this action under 42 U.S.C. § 405(g) and 42

U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying his application for disability insurance (DI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 9), the

Commissioner's cross motion for summary judgment (DE 11), and the administrative record (DE 7).

### A.    Background

Plaintiff filed his application for DI benefits on June 10, 2013, alleging that he has been disabled since May 8, 2013, at age 61.  (R. at 89-96; *see also* R. at 119-121, 122-128.)  Plaintiff alleges disability as a result of arthritis and problems with his shoulders, back and hips.  (R. at 123.)  Plaintiff's application was denied on August 30, 2013.  (R. at 44-52, 53, 54-57.)

On October 11, 2013, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 58-59; *see also* R. at 146-147.)  ALJ Richard L. Sasena held a hearing on December 1, 2014, at which Plaintiff, his wife (Cecelia Hall) and vocational expert (VE) Larissa Boase testified.  (R. at 22-43; *see also* R. at 86-87.)  On May 5, 2015, ALJ Sasena determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 9-21.)

Plaintiff requested review of the hearing decision.  (R. at 7-8.)  On August 18, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  Thus, ALJ Sasena's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on October 15, 2015.  (DE 1.)

### B.    Plaintiff's Medical History

Plaintiff alleges in the field office disability report that he has been disabled since May 8, 2013. (*See* R. at 119.) His medical records span the period from July 18, 2012 to March 4, 2015. (R. at 169-320 [Exhibits 1F-6F].) Although the 151 pages of medical records are comprised mainly of reports and records from the Henry Ford Health System (R. at 169-205 [Ex. 1F], 214-218 [Ex. 3F], 219-255 [Ex. 4F], 256-308 [Ex. 5F]), of particular importance are the August 12, 2013 and March 4, 2015 consultative examinations of Jai Prasad, M.D. (R. at 206-213 [Ex. 2F], 309-320 [Ex. 6F]). These will be discussed as necessary below.

### C.   Hearing Testimony

ALJ Richard L. Sasena conducted a hearing on December 1, 2014, at which Plaintiff, who appeared *in pro per*, his wife (Cecelia Hall) and VE Boase testified. (*See* R. at 26-37, 37-39, 39-43.) Plaintiff testified that he worked at his shop - Wayne Auto Care - for approximately 20 years, but he stopped working in April 2013 due to his back. (R. at 26-27.) Plaintiff explained that he broke his back when he was 17 years old, and it has gotten progressively worse as he has gotten older. (R. at 27; *see also* R. at 29, 31, 32, 36, 37.) Although Plaintiff applied for disability at the age of 61, by the time of the hearing he was 63 years of age. (R. at 30; *see also* R. at 89-96.) He explained that he has three compressed vertebrae, arthritis in the neck area and back pain in the left shoulder blade. (R. at 31.) However, he also testified that he has no problems driving, sitting, or walking

distances; he can stand; and he can lift "20, 30 pounds." (R. at 34-37.) When asked if he had any hobbies, Plaintiff mentioned "[w]orking on old cars, you know." However, he further testified that he has not "done much of it here lately[,]" and last worked on a car "[b]ack early in the summer [of 2014]." (R. at 34; *see also* R. at 35.) He has a riding lawnmower and a four-wheel snow blower with a blade, which he seemingly uses "to take and push the snow." (R. at 33-34.) Plaintiff does not have problems driving, and he helps with household chores. (R. at 34-35.)

As the instant appeal does not challenge the ALJ's determination that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . .[,]" (R. at 15), I will forego further summary of the testimony for the time being and only mention it as necessary below.

**D.    The Administrative Decision[1]**

_____

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4); see also 20 C.F.R. § 416.920. Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

ALJ Sasena rendered his decision on May 5, 2015.  At **Step 1**, he determined that Plaintiff has not engaged in substantial gainful activity since May 8, 2013, the alleged onset date.  (R. at 14.)  At **Step 2**, the ALJ determined that Plaintiff has the severe impairment of degenerative joint disease of the cervical, thoracic, and lumbar spine.  (R. at 14.)  At **Step 3**, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 14.)  At **Step 4**, the ALJ determined that Plaintiff had the RFC to perform light work with certain postural limitations, discussed *infra*., and further found that Plaintiff is unable to perform any past relevant work.  (R. at 14-17.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.  (R. at 17-18.)

### E.    Standard of Review

---

4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.   The ALJ's conclusion that Plaintiff has the RFC to perform the exertional limitations of light work, with some further postural limitations, is supported by substantial evidence.[2]

Plaintiff argues that the ALJ's light work RFC was not supported by substantial evidence, because the ALJ:  did not properly weigh the opinion evidence of the consultative examiner (Dr. Prasad); and, did not properly account for Plaintiff's exertional limitations.  (DE 9 at 12-19.)  The Commissioner argues

---

[2] Here, largely consistent with the postural limitations assessed by the state agency medical consultant (Dr. Nguyen), the ALJ determined that Plaintiff cannot use ladders, can occasionally stoop, and can frequently climb, balance, crouch, and crawl.  (*Compare* R. at 14, 49.)  Although Dr. Prasad's March 4, 2015 postural limitations are more restrictive with respect to climbing, balancing, crouching and crawling (R. at 318), Plaintiff does not appear to challenge the ALJ's decision as to postural limitations (DE 9 at 12-19).  Thus, this report and recommendation limits its discussion to the exertional limitations of light work.

for affirmance, asserting that: the ALJ properly considered Dr. Prasad's opinions (or alternatively, Plaintiff did not show harm from this alleged error); and, substantial evidence supported the RFC. (DE 11 at 10-18.)

### 1.   Evaluating opinion evidence under 20 C.F.R. §§ 404.1527, 416.927

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(b), 416.927(b). The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 CFR §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

### 2.   The ALJ's assignment of weight to the opinion evidence regarding Plaintiff's *exertional* limitations

By way of background, exertional limitations include lifting, carrying, standing, walking, sitting, pushing and pulling. *See* 20 C.F.R. §§ 404.1569(a),

416.969(a).  The regulations define the exertional limitations of light work as follows:

> Light work involves *lifting* no more than 20 pounds at a time with frequent *lifting* or *carrying* of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of *walking* or *standing*, or when it involves *sitting* most of the time with some *pushing* and *pulling* of arm or leg controls. . . .

20 C.F.R. §§ 404.1567(c), 416.967(c) (emphases added).

Here, the ALJ determined that Plaintiff had the RFC to perform the exertional limitations of light work.  (R. at 14.)  Plaintiff disputes this finding, arguing that the ALJ should have given more weight to Dr. Prasad's March 4, 2015 consultative opinion (R. at 310-320) - as he actually *examined* Plaintiff - than was given to state agency medical consultant Dr. Nguyen's August 23, 2013 physical RFC assessment (R. at 49-50) – as he only *reviewed* records.  However, for the reasons that follow, the Court should conclude that the ALJ properly assessed the opinions of Drs. Nguyen and Prasad.

> **a.** **The August 12, 2013 consultative examination of Jai Prasad, M.D. (R. at 206-213 [Ex. 2F])**

Dr. Prasad performed a consultative examination on or about August 12, 2013.  Although the ALJ did not expressly assign weight to this opinion, pertinent excerpts of it are offered here for comparison to Dr. Prasad's later opinion, discussed below.  The musculoskeletal examination revealed:

> On examination of the back, he has *muscle spasms* and *stiffness* in the dorsolumbar spine, but no point of *tenderness* and no neurological deficits in the lower extremities. As far as his neck is concerned, there is *stiffness* in his neck, with some *tenderness* at the C6-C7 area, but no neurological deficits in the upper extremities.

(R. at 208 (emphases added).) Dr. Prasad's assessment states:

> Mr. Hall suffers from lower back pain with stiffness in the back, but no neurological deficits in the lower extremities. He suffers from cervical spondylosis with *muscle spasms* and tenderness in the cervical spine, but no neurological deficits in the upper extremities. He suffers from hypertension and he takes medications for that, but there is no evidence of hypertensive heart disease. He has some stiffness in the right wrist consequent on his long occupation of working at an auto body shop.

(R. at 206-208 (emphasis added).) Dr. Prasad's "Neurologic and Orthopedic Supplemental Report" indicates that Plaintiff could not squat and arise from squatting and his *straight leg raising* was 0-35 degrees on the left and 0-40 degrees on the right. (R. at 209-210.) Furthermore, Dr. Prasad opined that Plaintiff had limited *range of motion* in the cervical spine and lumbar spine. (R. at 211-212.) As the ALJ acknowledged in his Step 4 RFC determination, x-rays of the lumbar spine and bilateral shoulders revealed: (1) nonacute appearing compression fracture of the L1 vertebral body, (2) spondylosis and facetal arthrosis, (3) minor osteoarthrosis of the right acromioclavicular joint, and (4) small broad-based infra-acromial scapular spurs (R. at 15, 213).

   **b. The August 23, 2013 opinion of state agency medical consultant Quan Nguyen, N.D. (R. at 44-52 [Ex. 1A])**

In an August 23, 2013 opinion, state agency medical consultant Dr. Nguyen determined that Plaintiff was exertionally limited to occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking for about 6 hours in an 8-hour workday, and sitting for about 6 hours in an 8-hour workday.  (R. at 49.)  "[A]dministrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled[.]"  20 C.F.R. §§ 404.1527(e)(2)(i).  The ALJ did so here, noting that Dr. Nguyen "opined in August 2013 that the claimant retains the capacity for light exertion with limited postural movements (Exhibit 1A [R. at 44-52])."  (R. at 16.)

Plaintiff argues that the ALJ's reliance on Dr. Nguyen's opinion ignores the fact that he did not examine Plaintiff and, thus, had an "inferior vantage point," compared to Dr. Prasad, who saw Plaintiff twice.  (DE 9 at 14.)  However, the regulations provide for consideration of opinions by nonexamining sources:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source s medical opinion if the State agency medical or p[s]ychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed

and comprehensive information than what was available to the
individual's treating source.

SSR 96-6P (S.S.A. July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e).

In assigning Dr. Nguyen's opinion "some weight," the ALJ acknowledged that Dr.

Nguyen did not have a treating relationship with Plaintiff; however, "the general

categories of restrictions [he] posit[s] are justified here."  (R. at 16.)  Thus, in

considering Dr. Nguyen's opinion, the ALJ expressly considered the factor set

forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("Treatment relationship.")

and implicitly considered the factor set forth in 20 C.F.R. §§ 404.1527(c)(4),

416.927(c)(4) ("Consistency."), which will be discussed in further detail below.

### c.     The March 4, 2015 consultative examination of Jai Prasad, M.D. (R. at 309-320 [Ex. 6F]).

Dr. Prasad performed another consultative examination on or about March 4,

2015.  The musculoskeletal examination revealed "*tenderness* at T10 in the

thoracic region, as well as at L1, so he has mid-back *tenderness*, as well as lower

back *tenderness*, with *stiffness*."  (R. at 312 (emphases added).)  This assessment

states:

> Mr. Hall's upper extremities are within normal limits and he can
> grasp, pinch, hold and manipulate things.  He has *stiffness* in the mid-
> back and lower back, with *muscle spasms*.  There are no neurological
> deficits in the lower extremities.  He can walk without any problem.
> He also has *pain* and *stiffness* in his neck, but no neurological deficits
> in the upper extremities.  He has hypertension.  He gets insomnia
> because of constant *back pain*.  He needs some management of his
> *back pain*.

(R. at 310-312 (emphases added).)  In addition, Dr. Prasad completed a "Michigan Disability Determination Service Range of Motion" form (R. at 313-314), as well as a medical source statement regarding Plaintiff's physical ability to do work-related activities (R. at 315-320).  Among other things, Dr. Prasad opined that Plaintiff could frequently lift/carry up to 10 pounds and occasionally lift/carry 11 to 20 pounds; also, Plaintiff could sit for 5 hours total in an 8-hour work day, stand for 1 hour total in an 8-hour work day, and walk for 1 hour total in an 8 hour work day.  (R. at 315-316.)  In addition, Dr. Prasad noted that the remaining hour of Plaintiff's work day would be spent lying down.  (R. at 316.)

The ALJ expressly acknowledged Dr. Prasad's March 4, 2015 opinion, noting that "[t]he medical consultative examiner opined in March 2015 that the claimant can occasionally lift up to 20 pounds; he can sit for 5 hours total in a workday, stand for 1 hour total in a workday, and walk for 1 hour total in a workday; and he has limited ability to perform postural movements (Exhibit 6F [R. at 309-320])."  (R. at 16.)

Plaintiff contends that the ALJ ignored Dr. Prasad's opinion that one hour of the 8-hour work day would be spent lying down (R. at 316), allegedly belying the ALJ's statement that "no treating physician has opined that greater restrictions are in order here[,]" (R. at 16), and conflicting with the VE's testimony that employers normally allow for "two 15-minmutes breaks, a 30-minmutes lunch and an

13

occasional extra bathroom break[,]" (R. at 42).  (DE 9 at 13-14).  It is Plaintiff's position that the need to lie down for a full hour would exceed these allowances and render him unable to perform such work.  (DE 9 at 14.)

Still, in assigning Dr. Prasad's opinion "some weight," the ALJ, as he had done with Dr. Nguyen's opinion, recognized that Dr. Prasad did not have a treating relationship with Plaintiff and further explained that the general categories of restrictions posited were justified.  (R. at 16.)  Thus, here, too, the ALJ expressly considered the factor set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("Treatment relationship.") and implicitly considered the factor set forth in 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Consistency."), which will be discussed in further detail below.

One quick note about timing is in order.  Plaintiff does point out that, at the time of Dr. Nguyen's August 23, 2013 opinion, the state agency medical consultant would not have had the benefit of reviewing Dr. Prasad's second (March 4, 2015) examination – the one including an assessment that Plaintiff's 8-hour work day would include *1 hour lying down*.  In other words, Plaintiff suggests that the ALJ's reliance on Dr. Nguyen's opinion essentially ignores Dr. Prasad's latter-occurring findings and conclusions, which included the limited range of motion in the cervical spine and lumbar spine (R. at 313) and the lifting/carrying,

14

sitting/standing/walking, and lying down limitations listed in the medical source statement (R. at 315-316).  (DE 9 at 14.)

However, the Social Security Ruling (SSR) which comments upon "consideration of administrative findings of fact by state agency medical and psychological consultants" provides, in part:

> . . . the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are *supported by evidence in the case record*, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

SSR 96-6P (S.S.A. July 2, 1996) (emphasis added).  And, as noted by the Commissioner, "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record.  The opinions need only be 'supported by evidence in the case record.'" *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (citing SSR 96-6P).  As will be illustrated in the following section, the ALJ's

determination that Plaintiff has the RFC to perform the exertional limitations of light work is supported by record evidence.[3]

### d. The ALJ provided "good reasons" for his assignment of weight.

The ALJ provided several good reasons for the relative assignments of weight to the opinion evidence, referencing many of the factors contemplated by 20 C.F.R. §§ 404.1527, 416.927.[4]  To begin, the ALJ stated, "[b]oth the treatment records and the claimant's testimony support a finding that the claimant experiences pain in the neck and back which limit his physical activities, particularly exertionally and posturally.  Accordingly, the undersigned determines that the claimant is limited to light exertion with no use of ladders, occasional stooping, and frequent climbing, balancing, crouching, and crawling.  Greater restrictions are not warranted."  (R. at 16.)  In so doing, the ALJ made the following findings, each of which is supported by the more than adequate references to the record:

---

[3] In any event, as the Commissioner points out, the VE's testimony that breaks and lunch total 60 minutes (1 hour) renders harmless any failure by the ALJ to expressly adopt Dr. Prasad's March 4, 2015 assessment that Plaintiff's work day would include 1 hour lying down.  (DE 11 at 11-12; *see also* R. at 42.)

[4] Although these are factors applied to treating sources – and Dr. Prasad was indisputably not a treating source, but, rather, a state consultant – the application of this framework is logical and by no means inappropriate here.

### i.  *"First, the claimant's documented treatment has been minimal and conservative."*

In addition to Dr. Atasi's February 11, 2014 progress notes cited by the ALJ, which revealed an unremarkable musculoskeletal objective physical examination but diagnoses including mid back pain and an apparent referral to physical therapy (R. at 219-221 [Ex. 4F]), the ALJ referred to Dr. Atasi's March 12, 2014 progress notes, which reflect "Pt will go to PT, he has not had the time to schedule it since he had the stress test[,]" (R. at 229-232 [Ex. 4F]), Dr. Lee's December 9, 2014 progress notes, wherein Plaintiff described his back pain as "moderate[,]" and which indicate a prescription for Norco (R. at 292-293 [Ex. 5F]), and Devynn Sarver, PA's December 23, 2014 notes, which note chronic neck pain, cervical radiculopathy, chronic thoracic back pain, thoracic radiculopathy, chronic low back pain, chronic L1 compression fracture and lumbar radiculopathy (R. at 300-302 [Ex. 5F]).[5]

### ii.  *"Second, he has reported to treaters that medication is helpful."*

On this subject, the ALJ points to Henry Ford Health System records from December 2014, one of which states: "He has been taking Robaxin, Norco, and

---

[5] I further acknowledge that Dr. Frisoli's February 15, 2014 notation that it was reasonable to treat Plaintiff's chest symptoms "conservatively and medically at this time[.]" (R. at 229, 283-284; *see also* R. at 230, 284.)

Meloxicam more recently which do seem to be helping with the pain[.]" (R. at 16, 301).

> iii.   ***"Third, the degree of abnormalities revealed by the diagnostic imaging is mild and the claimant's physical examinations likewise have shown minimal abnormalities."***

**As for diagnostic imaging**, the ALJ pointed to (A) an August 12, 2013 x-ray of the lumbar spine, which indicated a non-acute appearing compression fracture of the L1 vertebral body and spondylosis and facetal arthrosis, as well as a same-day x-ray of the bilateral shoulders, which revealed minor osteoarthrosis of the right acromioclavicular joint and small broad-based intra-acromial scapular spurs (R. at 15, 213); and (B) February 12, 2014 x-rays of the lumbar sacral spine, which, in addition to "approximately 50% loss of uncovertebral body height[,]" revealed (1) slightly worsened mild degenerate changes throughout the thoracic spine, (2) stable mild multilevel degenerative changes within the lumbar spine, (3) no acute osseous abnormality identified, and (4) unchanged compression deformity of the ventral L1 vertebral body (R. at 16, 214-218 [Ex. 3F]; *see also* R. at 243-246 [Ex. 4F], 267, 269 [Ex. 5F]).[6] **As for physical examinations**, the ALJ acknowledged December 23, 2014 musculoskeletal notes of *tenderness* along the

---

[6] The record also contains evidence of February 15, 2014 chest x-rays (R. at 247-248 [Ex. 4F], 266 [Ex. 5F]).

spine and left shoulder (R. at 301-302 [Ex. 5F]), but also stated that Plaintiff

"typically exhibits *normal* range of motion, *normal* strength, *negative* straight leg

raise test, and *intact* ability to heel, toe, and tandem walk[.]"  (R. at 16) (emphases

added).[7]

> #### iv.    *"Fourth, no treating physician has opined that greater restrictions are in order here."*

The ALJ properly recognized that neither the state agency medical

consultant (Dr. Nguyen) nor the CE (Dr. Prasad) had a *treating relationship* with

Plaintiff.  (R. at 16 (emphasis added).)

> #### v.    *"Fifth, the claimant's own testimony supports a finding that he is not precluded from light exertion, as he testified that he does not have difficulty sitting, standing, or walking, and he is capable of lifting at least 20 to 30 pounds."*

At the hearing, Plaintiff testified, "I have no problems sitting[,]" and "I can

stand, yes."  (R. at 35-36; *see also* R. at 37.)  Although Plaintiff stated, "I can't

hardly lift anything[,]" he also stated, "I know I can lift 20, 30 pounds, I know

that."  (R. at 36-37.)  Furthermore, when asked if he has problems walking

---

[7] The record contains evidence of multiple objective physical examinations which rendered largely unremarkable musculoskeletal observations.  (*See* R. at 195 [Ex. 1F]; R. at 220, 223, 231 [Ex. 4F]; R. at 277, 285, 289, 292-293 [Ex. 5F]).

distances, Plaintiff responded, "No, not really.  Don't do a lot of walking so I don't know.  But I don't have really – seem to have no problem, no."  (R. at 37).

> vi. *"Also, despite his impairments, he manages a wide-ranging regimen of physical activities: he prepares meals, performs household chores, drives, socializes, and shops (Exhibit 4E [R. at 137-144])."*

In his July 15, 2013 function report, Plaintiff indicated that:  he prepares his own meals, although this seems to be limited to microwaving frozen dinners and prepared meals; is able to do the dishes and laundry & make the bed (which takes 15 minutes) and ride the lawn mower (which takes 3 hours, taking breaks to rest his broken back);[8] drives, although he has a handicapped plate;[9] spends time with others, either on the phone or the computer or in person, such as talking to his wife or when family comes to visit;[10] and shops in stores for groceries once every 2 weeks for 2 hours.  (R. at 139-142.)  As the ALJ acknowledged, Dr. Frisoli's February 24, 2014 notes observe that "[u]p until this recent emergency room visit,

---

[8] Also, I note Plaintiff's apparent testimony that he uses a riding lawnmower and a four-wheel snow blower with a blade (R. at 33-34), as well as his testimony about helping with house chores (R. at 35).

[9] Here, Plaintiff points to his wife's testimony that they had to pull over *during a recent trip to North Carolina* so that Plaintiff could "move around."  (DE 9 at 16, R. at 38.)  However, he also testified that he does not have any problems driving.  (R. at 34.)

[10] Plaintiff testified that he passes time "[e]ither [on the] computer or something like that."  (R. at 35; *see also* R. at 37.)

[Plaintiff] was exercising on an elliptical and walking and never developed any chest pressure . . . ." (R. at 16, 226, 280.) I additionally note that even since leaving his employment in "auto body repair," Plaintiff partook in "[w]orking on old cars[.]" (R. at 27, 34.)

(R. at 16 (emphases added).) Thus, the ALJ considered the supportability and consistency factors of 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4) and appropriately discounted more limiting exertional limitation opinions which are inconsistent with this well-developed record.

> ### 3. Substantial evidence supports the ALJ's determination that Plaintiff's RFC includes the *exertional limitations* of light work.

Plaintiff challenges the ALJ's determination as to the exertional limitations of sitting, standing and walking. (DE 9 at 16-18.) Specifically, Plaintiff takes issue with his ability to perform work on a "regular and sustained" basis, pointing to *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524 (6th Cir. 1992), wherein the court agreed that Plaintiff did not have the RFC to continue her prior work at Wayne State University or perform other substantial gainful employment and believed that "the level of activity maintained by Cohen since she began suffering from the Chronic Epstein–Bar virus and the associated chronic fatigue syndrome is a tribute to her courage and determination in refusing to surrender to the debilitating effects of her illness." *Cohen*, 964 F.2d at 530. But

such cases are of extremely limited value, as they are highly fact dependent.  Here, the facts are quite distinguishable, the ALJ based his opinion on abundant and substantial evidence, and the Plaintiff has failed to meet his burden of establishing a more restrictive RFC than that found by the tribunal.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

Plaintiff also asserts that his testimony about the exertional limitations did not elicit information about the time frame or duration that he could sit, stand or walk.  (*See* DE 9 at 17-18.)  To be sure,

> The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity.  Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant.  *A man is disabled within the meaning of the Act, if he can engage in substantial gainful activity only by enduring great pain.*

*Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) (emphasis added).  In other words, "[a]n applicant need not be bedridden or completely helpless in order to fall within the definition of 'disability.'"  *Walston*, 381 F.2d at 585.  True enough; but more to the point, the ALJ in this case clearly performed a proper analysis by

considering daily activities (20 C.F.R. § 404.1529(c)(3)(i)).[11]  Having considered this factor, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (R. at 15.)  This credibility finding was well-supported and well-reasoned, and the standard of review requires that it be given deference.  Plaintiff has not challenged the ALJ's credibility assessment.

Moreover, as noted above, the lifting / carrying, standing / walking, and sitting exertional requirements of light work are supported by state agency medical consultant Dr. Nguyen's August 23, 2013 physical RFC assessment (R. at 49), CE Dr. Prasad's March 4, 2015 medical source statement on lifting / carrying (R. at 315), and Plaintiff's December 1, 2014 own testimony on lifting, standing, walking and sitting (*see* R. at 35-37).  Thus, the Court should conclude that the ALJ's determination that Plaintiff has the RFC to perform the exertional requirements of light work is supported by substantial evidence.

### G.    Conclusion

I conclude that the ALJ properly assigned "some weight" to the August 2013 opinion of state agency medical consultant Dr. Nguyen and the March 4, 2015 opinion of CE Dr. Prasad in accordance with 20 C.F.R. §§ 404.1527(c),

---

[11] *See also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[a]s a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.").

416.927(c).  Moreover, I conclude that the exertional limitations included in the ALJ's RFC are supported by substantial evidence.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 9), **GRANT** Defendant's motion for summary judgment (DE 11), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 24, 2016            s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 24, 2016, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti